COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Frank
Argued at Chesapeake, Virginia


JEROME MOSES THORNTON

                                    MEMORANDUM OPINION* BY
v.    Record No. 2579-99-1          JUDGE LARRY G. ELDER
                                       DECEMBER 5, 2000
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                    Johnny E. Morrison, Judge

          S. Jane Chittom, Appellate Counsel (Public
          Defender Commission, on brief), for
          appellant.

          Robert H. Anderson, III, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Jerome Moses Thornton (appellant) appeals from his bench

trial conviction for the unlawful wounding of James Cary in

violation of Code § 18.2-51.[1]  On appeal, he contends the trial

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

     [1] Appellant originally was indicted for malicious wounding
in violation of Code § 18.2-51.  The order of conviction recites
that the court found him guilty of the lesser-included offense
of unlawful wounding in violation of Code § 18.2-51.  The
sentencing order, however, purports to indicate that appellant
was convicted for malicious wounding and cites an unrelated code
section, § 18.2-250, which proscribes the possession of certain
controlled substances.  The trial transcript makes clear that
the trial court "[found] [appellant] guilty of unlawful
wounding," as confirmed by the conviction order and agreed upon
by the parties.  Therefore, we remand the matter to the trial

court erroneously (1) denied his mistrial motion based on the Commonwealth's failure to disclose the existence of a knife, which he contends was material, exculpatory evidence; (2) denied his motion for a continuance to secure testimony concerning the previously undisclosed exculpatory evidence; and (3) held the evidence sufficient to support his conviction given impeachment of victim Cary and appellant's claim of self-defense.  We hold the evidence did not establish the Commonwealth should have known the existence of the knife or the location from which it was seized was exculpatory evidence.  Further, the evidence established that a diligent defense attorney would have been aware of the existence and seizure of the knife prior to trial. Because no discovery or due process violation occurred, the trial court did not abuse its discretion in denying the mistrial and continuance motions.  Finally, Cary's testimony was not inherently incredible, and that testimony, along with the physical evidence, was sufficient to support appellant's unlawful wounding conviction.  Therefore, we affirm the conviction.

---

court for the sole purpose of correcting the clerical errors in the sentencing order.  See Tatum v. Commonwealth, 17 Va. App. 585, 592, 440 S.E.2d 133, 138 (1994); see also Code § 8.01-428(B).

-

A.

MISTRIAL AND CONTINUANCE MOTIONS

Whether to grant a motion for a mistrial or for a continuance rests within the discretion of the trial court. See, e.g., Novak v. Commonwealth, 20 Va. App. 373, 391-92, 457 S.E.2d 402, 410-11 (1995). Denial of either motion will be reversed on appeal only upon a showing that the trial court abused its discretion and that the party was prejudiced as a result. See id. at 391-92, 457 S.E.2d at 411. "A court must not exercise its discretion in a manner which would deny an accused . . . sufficient time to investigate and evaluate the evidence in preparation for trial." Lomax v. Commonwealth, 228 Va. 168, 172, 319 S.E.2d 763, 765 (1984).

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963). "[I]nformation known to the police is information within the Commonwealth's knowledge[,] and the prosecutor is obliged to disclose [it] regardless of the state of his actual knowledge." Moreno v. Commonwealth, 10 Va. App. 408, 418, 392 S.E.2d 836, 842-43 (1990). A Brady violation occurs when the prosecution fails to disclose material

-

exculpatory evidence within its exclusive control.  See Lugo v. Munoz, 682 F.2d 7, 9 (1st Cir. 1982), cited with approval in United States v. Wilson, 901 F.2d 378, 380 (4th Cir. 1990). However, Brady is not violated "'if the evidence in question is available to the defendant from . . . sources [other than the government],'" Wilson, 901 F.2d at 380 (quoting United States v. Davis, 787 F.2d 1501, 1505 (11th Cir. 1986)), and would have been "readily available to a diligent defense attorney" through those other sources, Lugo, 682 F.2d at 9; cf. Coleman v. Commonwealth, 27 Va. App. 768, 773-76 & n.2, 501 S.E.2d 461, 463-65 & n.2 (1998) (in case not implicating Brady because evidence was not exculpatory, holding that defendant waived statutory right to have Commonwealth furnish him with copy of certificate of analysis it planned to introduce at trial because defendant requested copy in discovery motion, agreed to appear in Commonwealth's Attorney's office to receive items requested, and never appeared in office to complete discovery).  "'The purpose of the Brady rule is . . . to assure that [the defendant] will not be denied access to exculpatory evidence known to the government but unknown to him.'"  Lugo, 682 F.2d at 10 (quoting United States v. Ruggiero, 472 F.2d 599, 604 (2d Cir. 1973)).

In appellant's case, the defense requested all exculpatory material, and the Commonwealth responded that "no exculpatory

-

evidence in this case is known to the Commonwealth."  The

Commonwealth's attorney was charged with the knowledge of all

police in the jurisdiction involved in the case, and he admitted

he was unaware, prior to trial, of the existence of the second

knife or what Officer Jones would say about its seizure.

However, the existence of the knife was not inherently

exculpatory, and nothing in the record indicates the

Commonwealth should have been aware prior to trial that

appellant was proceeding on a theory of self-defense.[2]  Thus, no

evidence established that the Commonwealth's lack of awareness

led to a discovery or due process violation.

Assuming the second knife was seized by Officer Jones in

connection with this case--a reasonable assumption given its

presence in the evidence bag and the testimony of Officer

Milteer that he did not seize the knife--no evidence either

previously admitted or proffered to the trial court at the time

of appellant's mistrial and continuance motions established that

the existence of the knife or the location from which Jones

seized it was exculpatory.  The victim had testified that he was

unarmed during the altercation.  If Jones, by way of example,

had told the Commonwealth's attorney he seized the second knife

---

[2] Not until appellant's mistrial motion and case-in-chief
did his theory of the case become clear, and no evidence ever
established what Officer Jones would have said about his seizure
of the knife.

-

from appellant's room along with the meat cleaver or hatchet appellant used to cut the victim, the Commonwealth would have had no reason to believe the second knife was exculpatory and, therefore, no duty to reveal its existence or the location from which it was seized in response to the request for exculpatory evidence.

Because appellant failed to establish at the time he moved for the mistrial and continuance that the existence of the knife or the location in which it was found was exculpatory or that the Commonwealth should have known it may have been exculpatory under appellant's theory of the case, the trial court did not abuse its discretion in denying the motions.

Further, no reversible error occurred because the substance of the evidence, if it was exculpatory, was "readily available to a diligent defense attorney" through sources other than the government.  Lugo, 682 F.2d at 9; Wilson, 901 F.2d at 380. Appellant himself testified that Cary began the altercation by threatening appellant with a pocketknife.  Defense witness Barker testified that he told one of the officers at the scene that Cary threatened appellant with a knife and that Barker observed one of the officers seize this knife from Cary's pocket at the scene.[3]  A diligent defense attorney would have been aware

---

[3] To the extent this testimony could be considered an informal proffer of Officer Jones' expected testimony, it was

of these representations prior to trial, would have taken

advantage of the opportunity under the discovery order to view

the Commonwealth's tangible evidence, cf. Coleman, 27 Va. App.

at 773-76, 501 S.E.2d at 463-65, and, upon discovering the

second knife in the evidence bag, would have taken steps to

obtain further information about it--by questioning the

Commonwealth's attorney about the knife, arranging to speak to

Officer Jones about the knife, or at least refusing to stipulate

to the chain of custody of the evidence or subpoenaing Officer

Jones to assure his availability for trial.

Under these circumstances, a diligent defense attorney

should have had ample time to obtain and use this information in

preparing for trial. Therefore, we hold the trial court did not

abuse its discretion in denying the mistrial or continuance

motions.

B.

SUFFICIENCY OF THE EVIDENCE

When considering the sufficiency of the evidence on appeal

in a criminal case, we view the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable

inferences fairly deducible therefrom. See Higginbotham v.

---

offered and admitted only after the trial court had denied
appellant's mistrial and continuance motions, and appellant did
not renew the motions after this informal proffer was made.
Therefore, the trial court had no duty to revisit the issue.

Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). The conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only if this Court finds that the witness' testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief." Fisher v. Commonwealth, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984).

Appellant was charged with malicious wounding and convicted for the lesser-included offense of unlawful wounding. Code § 18.2-51 provides:

> If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided be guilty of a Class 3 felony. If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall be guilty of a Class 6 felony.

If a wounding remains unlawful but results from "heat of passion," such as rage or fear, rather than malice, it constitutes unlawful wounding rather than malicious wounding. See Miller v. Commonwealth, 5 Va. App. 22, 24-25, 359 S.E.2d 841, 842 (1987). Finally, where the accused responds to a threat of harm from another and "the amount of force [the accused] use[s] [is] reasonable in relation to the harm threatened," the accused may be acquitted based on self-defense. See Diffendal v. Commonwealth, 8 Va. App. 417, 421, 382 S.E.2d 24, 25-26 (1989).

-

Although appellant contends he should have been acquitted based on self-defense, the evidence, viewed in the light most favorable to the Commonwealth supports the trial court's finding that appellant committed an unlawful wounding. The undisputed evidence established that appellant attacked and cut Cary with an eleven-inch meat cleaver. Cary testified that he did nothing to provoke the attack and that he did not have a knife in his possession during the altercation. The trial court was entitled to reject the testimony of Barker and appellant that it was Cary who first brandished a knife and that appellant did not injure Cary until after Cary threatened appellant with the knife. The mere fact that the police officers responding to the scene recovered a knife that may have belonged to Cary did not compel the conclusion, contrary to Cary's testimony, that Cary had the knife in his possession or that he used it to threaten appellant. Finally, even if the trial court concluded that Cary wielded a knife, the undisputed evidence established that Cary's injuries were severe whereas appellant sustained no injuries. These facts permitted the trial court to find that the amount of force appellant used was not reasonable in relation to the harm threatened, thereby justifying the trial court's rejection of appellant's self-defense claim.

For these reasons, we hold the trial court's denial of appellant's mistrial and continuance motions was not erroneous

-

and that the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to support appellant's conviction for unlawful wounding. Therefore, we affirm the conviction. However, due to the clerical errors in the sentencing order regarding the offense for which appellant was convicted, <u>see</u> <u>supra</u> footnote 1, we remand this matter to the trial court for the sole purpose of amending the sentencing order to reflect that appellant was convicted of unlawful wounding in violation of Code § 18.2-51.

<u>Affirmed on the merits and remanded with instructions.</u>

-

Benton, J., dissenting.

I would hold that when the prosecutor disclosed for the first time at trial evidence that had exculpatory value to Jerome Moses Thornton, the trial judge abused his discretion by refusing to grant Thornton's motion for a continuance.

I.

In pertinent part, the grand jury indictment reads as follows:

> [T]he accused,

JEROME H. THORNTON

> ### 1. Malicious Wounding
>
> On or about March 6, 1999, did unlawfully shoot, stab, cut, or wound, or cause bodily injury to [James] Cary with the intent to maim, disfigure, disable or kill.
>
> A Class 3 felony, in violation of [Code] § 18.2-51.

The trial transcript and conviction order demonstrate that the trial judge convicted Thornton of the offense of unlawful wounding, a Class 6 felony.  I agree with the majority that the trial judge's sentencing order erroneously states that the trial judge convicted Thornton of "malicious wounding."  Thus, the sentencing order contradicts the conviction order and, furthermore, it erroneously references Code § 18.2-250, which relates to controlled substances.  Unlike the majority, however,

-

I do not believe that these discrepancies are mere clerical errors because the record does not establish that they are such. Because these mistakes may well have influenced the sentence itself, I believe that at a minimum we should vacate the sentencing order and remand the matter for resentencing.

## II.

I believe, however, that the record requires us to reverse the conviction and remand for a new trial. At trial, the complaining witness, James Cary, testified that Thornton struck him without provocation, cutting and scarring the left side of his face. Cary denied attacking Thornton with a knife during the incident and denied having a knife during the fray. He testified that "when [he] went to bed the next day, [he] got up, felt in [his] pocket for [his] pocket knife, it was not there. [He] didn't have no weapon on [him] at that time."

Officer Milteer, who investigated the incident with Officer Jones, testified that Officer Jones recovered a meat cleaver from Thornton's room. Officer Milteer testified that another knife was seized during the investigation but he did not seize it. He said Officer Jones "recovered the evidence." The prosecutor did not call Officer Jones as a witness and stated that Thornton's counsel had "stipulated to . . . the chain of evidence."

-

Thornton's counsel moved for a mistrial because the prosecutor had affirmatively stated during discovery that "[n]o exculpatory evidence in this case is known to the Commonwealth" and had failed to disclose the second knife. Opposing the motion, the prosecutor informed the judge he was unaware the knife was in the evidence bag. The record contains a discovery order requiring the prosecutor to provide to the defense "[a]ll evidence or information in the possession or control of the Commonwealth which tends to exculpate the defendant." In addition, Thornton's counsel informed the judge she had not inspected the objects in the prosecutor's possession even though the discovery order permitted her to do so. Without stating a reason, the trial judge denied Thornton's motion for mistrial. Thornton's counsel then sought a "continuance, so that [she] at least can have an opportunity to get Officer Jones here, so that [she] can question him about this knife." The trial judge summarily denied that motion. I would hold that the trial judge abused his discretion in denying Thornton a continuance.

III.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material . . . to guilt . . . , irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). Under Brady, "the individual prosecutor

-

has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." <u>Kyles v. Whitley</u>, 514 U.S. 419, 437 (1995). The existence of two knives in the evidence bag was more than sufficient to alert the prosecutor in this case to the reasonable probability that both men were armed and to make inquiry of the officers concerning the source of the second knife.

> [T]he Commonwealth is not relieved of the discovery responsibilities because it fails to make reasonable inquiry of the police concerning the evidence it will use to prove the case. The Commonwealth is charged with the responsibility to interview all government personnel involved in a case in order to comply with its discovery obligations.

<u>Harrison v. Commonwealth</u>, 12 Va. App. 581, 585, 405 S.E.2d 854, 857 (1991). The existence of the two knives and the prosecutor's interview of her witnesses would have reasonably informed the prosecutor that evidence favorable to Thornton was in her possession.

As the majority opinion notes, Thornton's trial counsel is not blameless in the matter. The discovery order required the prosecutor to "[p]ermit the defendant to inspect . . . tangible objects . . . in the possession, custody, or control of the Commonwealth." Thornton's counsel failed to request an opportunity to view the evidence file. Despite that lapse,

-

however, the prosecutor's affirmative statement in writing prior to entry of the discovery order that "[n]o exculpatory evidence in this case is known to the Commonwealth" establishes a Brady violation.

Faced with these circumstances and the disclosure of this evidence during the trial, the trial judge abused his discretion in failing to grant Thornton's request for a continuance. In so doing, he adversely affected Thornton's opportunity to use this evidence in his defense at trial.

> [A]lthough granting or denying a continuance is within the discretion of the trial court, it must exercise its discretion "with due regard to the provisions of the Bill of Rights, which secure to one accused of crime a fair and impartial trial; and to that end safe-guard his right 'to call for evidence in his favor.'" When a court has no reason to believe that a motion for a continuance is spurious, it should seriously consider whether a failure to grant the continuance may "imperil the just determination of the cause." . . . "An ideal system of laws would be one in which speedy justice is administered, but justice and not speed should be its paramount purpose."

Gilchrist v. Commonwealth, 227 Va. 540, 546, 317 S.E.2d 784, 787 (1984) (citations omitted). "The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence." United States v. Nixon, 418 U.S. 683, 709 (1974). When the evidence proves, as here, that "[t]he right to explore

-

and develop this evidence was critical to the defendant's case," the failure to grant his motion for a continuance is an abuse of discretion. Lomax v. Commonwealth, 228 Va. 168, 173, 319 S.E.2d 763, 766 (1984).

The record established that the late disclosure of evidence regarding the existence of the second knife and its seizure by police from Cary prejudiced Thornton in the preparation of his defense. In the absence of Officer Jones' testimony concerning the origin of the knife, the trial judge apparently disbelieved the defense witness' testimony. A defense witness, who lived in the boarding house with the two men, testified that Thornton and Cary "had words" and that Cary then swung at Thornton. During the ensuing tussle, Cary "took out a knife." The witness testified that later, when the police arrived, he told them Cary had a knife. He testified that a police officer removed the knife from Cary's pocket. The witness identified the knife Officer Milteer displayed as Cary's knife.

Thornton testified that Cary swung at him after Cary mistakenly believed Thornton had commented on Cary's body odor. Thornton testified that after they tussled he got away from Cary and went outside. When he returned, Cary came toward him with a knife to stab him. He testified that he cut Cary with a cleaver while he was defending himself.

-

After both parties presented their evidence, the trial judge recalled Cary to the courtroom and asked if the knife was his. Cary said it was. The trial judge expressly ruled, however, that Cary's identification of the knife as his own was "not evidence." The judge then convicted Thornton of unlawful wounding.

Although Cary denied that he had a weapon during the fray, Officer Milteer's testimony established that Officer Jones seized this knife during their investigation immediately after the altercation. Apparently, appellant did not know Officer Jones seized the knife and agreed to stipulate to the chain of custody of the Commonwealth's evidence. If Officer Jones had been present at trial, he could have confirmed that he seized the second knife from Cary in response to the witness' contemporaneous report that Cary brandished the knife at Thornton during their altercation. Such testimony from a witness with no known motive to fabricate would have strengthened Thornton's claim of self-defense significantly and would have given Thornton a much stronger base from which to cross-examine Cary about his claim that he did not have the knife in his possession and did nothing to provoke the fight with Thornton. Officer Jones' absence from the trial, a direct result of the prosecutor's failure timely to disclose its

-

possession of exculpatory evidence, clearly prejudiced Thornton) in the presentation of his defense.

The trial judge could have cured this prejudice effectively by granting Thornton's continuance request. This was not a case in which Thornton's testimony or trial strategy was at odds with the undisclosed exculpatory evidence. Moreover, nothing in the record indicates that Thornton would have presented a different theory of the case had he received advance notice of the prosecutor's possession of Cary's knife. Compare Conway v. Commonwealth, 12 Va. App. 711, 716, 407 S.E.2d 310, 312-13 (1991) (en banc) (holding that late disclosure of taped statement of accused in response to discovery order prejudiced accused's defense and required mistrial because it was not revealed to him until after he had testified at odds with statement and it was used to impeach him), with Knight v. Commonwealth, 18 Va. App. 207, 214-15, 443 S.E.2d 165, 169-70 (1994) (holding that late disclosure of accused's statement to police did not require mistrial because it was not at odds with his testimony and theory of the case). The prejudice caused by this late discovery could have been cured by granting Thornton's request for a continuance to allow him to present testimony from Officer Jones. If necessary, Thornton's counsel could then also have recalled Cary or Thornton for further examination prompted by Officer Jones' testimony.

-

At the conclusion of the evidence the trial judge ruled "the Court is of the opinion that malicious wounding should be reduced to unlawful wounding; therefore, the Court finds you guilty of unlawful wounding."  The trial judge's statement that Thornton was guilty of "unlawful wounding" may well have been predicated in part upon his doubt whether Cary was completely truthful when he testified that he "didn't have [a] weapon on [him] at that time."  Thus, the failure to allow Thornton a continuance to obtain the testimony of Officer Jones deprived him of evidence that tended directly to establish his self-defense.

For these reasons, I would hold that the trial judge abused his discretion in denying Thornton's motion for a continuance to obtain the material testimony of Officer Jones.  I dissent.